ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK THOMAS LINDEMAN,<br><br>Defendant. | NO. 23-CR-495-JD-1<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. James Donato<br>Sentencing Date: January 27, 2025<br>Time: 10:30 a.m. |

## I.   INTRODUCTION

Defendant Mark Lindeman (age 35) pleaded guilty to Count Three of the captioned Indictment charging him with distribution of a mixture and substance containing methamphetamine on August 26, 2024.  PSR ¶ 2; Dkt. 52.  Lindeman and his girlfriend—co-defendant Kaitlyn Weldon—sold 1,000 orange pills containing methamphetamine to a DEA confidential source (CS) for $1,000 in May 2023. PSR ¶¶ 10-11.  In June 2023, Lindeman and Weldon sold the same CS 5,000 orange pills with methamphetamine for $4,000 in cash.  PSR ¶¶ 12-15.  The DEA investigated Lindeman and Weldon based on information that they were pressing imitation Adderall orange pills containing methamphetamine at their San Jose house.

## II. SENTENCING GUIDELINES CALCULATION

As reflected in the PSR, U.S. Probation has calculated Lindeman's offense level as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(c)(5) | | 30 |
| b. | Specific Offense Characteristic: § 2D1.1(b)(18) | | -2 |
| c. | Obstruction of Justice Adjustment, U.S.S.G. § 3C1.1 | | +2 |
| d. | Acceptance of Responsibility, U.S.S.G. § 3E1.1 | | -3 |
| e. | Total Offense Level: | | 27 |

*See* PSR ¶¶ 22-31. U.S. Probation has determined that Lindeman has a criminal history category of I. PSR ¶ 38. The applicable advisory guidelines range is 70-87 months. PSR ¶ 87.

## III. DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Section 3553(a) sets forth factors that the Court must consider in determining an appropriate sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

### A. The Offense – Sale of Fake Adderall Pills Containing Methamphetamine

Based on information from a Confidential Source (CS), the DEA identified Mark Lindeman and Kaitlyn Weldon as drug traffickers who sold narcotics in the San Francisco Bay Area. PSR ¶ 8. Lindeman and Weldon resided and operated their narcotics business from their residence in San Jose. *Id.* The CS told agents that the CS discussed narcotics with Lindeman and Weldon via the encrypted app Signal. *Id.*

1    Throughout May 2023, agents had the CS message with Lindeman on Signal to negotiate the purchase of fake Adderall—orange pills with the stamps of prescription Adderall medication that typically contain methamphetamine. PSR ¶ 9. On May 24, 2023, the CS spoke with Lindeman and Weldon via Signal and arranged to purchase 1,000 fake Adderall pills for $1,000 at a Philz Coffee in South San Francisco on May 25, 2023. *Id.*

On May 25, 2023, agents observed Lindeman and Weldon leave their San Jose residence and place objects into the trunk and backseat of their white Toyota Camry. PSR ¶ 10. Lindeman and Weldon drove to the parking lot of Philz Coffee in South San Francisco. *Id.* Outside Philz Coffee, Lindeman and Weldon greeted the CS. *Id.*

In a recorded transaction, Mark Lindeman placed a black and white Lululemon bag containing approximately 1,000 orange fake Adderall pills pressed with methamphetamine on a bench next to the CS. PSR ¶ 11. The CS then handed Kaitlyn Weldon an envelope containing $1,000, which Weldon accepted. *Id.* Subsequent DEA Laboratory tests of the orange pills found that they contained approximately 11.7 grams of actual methamphetamine. *Id.*

Between June 20 and June 27, 2023, the CS communicated with Lindeman via Signal and arranged to purchase 5,000 fake Adderall pills for $4,000 in Mountain View, California. PSR ¶ 12.

On June 27, 2023, agents observed Lindeman and Weldon drive into a Mountain View parking lot. PSR ¶ 14. The CS walked over to Lindeman and Weldon's vehicle and entered the driver-side rear passenger door. *Id.* The ensuing conversation was recorded by the DEA. Lindeman told the CS that the pills were in the trunk. PSR ¶ 15. Lindeman then exited the vehicle and retrieved a box from the trunk. *Id.* While Lindeman was out of the vehicle, the CS handed Weldon a white envelope containing $4,000 in cash. *Id.*

Lindeman then re-entered the driver's seat of the car with a box and placed it on the center console. PSR ¶ 15. Lindeman then asked if the CS had paid for the pills yet. *Id.* Weldon told Lindeman that the CS had paid. *Id.* Weldon then brushed off the box and handed it to the CS. *Id.* Inside the box were five Ziploc bags containing orange fake Adderall pills with "dp" and "30" stamps found on prescription Adderall pills. *Id.*

DEA laboratory results for the orange fake Adderall pills that the CS purchased showed that they

contained approximately 67 grams of actual methamphetamine. PSR ¶ 16. The parties agree in the plea agreement (Dkt. 52) that Lindeman is responsible for at least 78 grams of actual methamphetamine. *Id.*; Dkt. 52 at 3.

### B. Obstruction of Justice – Lindeman Threatens the CS



Around November 26, 2023, Lindeman sent a series of threatening messages to the CS suggesting that she was a snitch and threatening to harm her. PSR ¶ 16. Apparently alarmed by the DEA's arrest of other narcotics dealers he knew, Lindeman later called the CS through Signal and told her in slurred speech: "If you rat your people again, I will put you in the ground. Are we clear?" *Id.* When the CS repeated what Lindeman had said, suggesting that she had misheard the word "rat" as "rang", Lindeman repeated the threat clearly. *Id.* Following his arrest, Lindeman admitted to making the phone call and threatening the CS but said that he was drunk and did not mean it. PSR ¶ 16.

### C. Other Section 3553(a) Factors

Lindeman is a 35-year-old man. PSR at 3. He is the adopted child of two public health doctors (both age 72) who live in Berkeley, California. PSR ¶ 43. The defendant has two siblings: a brother (age 32) who lives in Oakland and works at Jamba Juice and Cycle Gear, and a sister (age 24), who lives in San Diego and works as a clerk at a doctor's office. *Id.*

Lindeman's family moved to Chicago, Illinois when he was three years old, and Chicago is where Lindeman spent most of his childhood. PSR ¶ 44. His parents had demanding careers and traveled often for work. *Id.* Lindeman and his siblings were raised mostly by a nanny who lived in their home. *Id.* As a child, Lindeman witnessed domestic violence between the nanny and her husband who lived in the same home as Lindeman. PSR ¶ 45.

During his adolescence, Lindeman began getting into more and more trouble for behavioral issues at school and for using alcohol and marijuana. PSR ¶ 48. He was expelled from his school, and his parents sent him to a boarding school on the East Coast. *Id.* Later, Lindeman was expelled from the

boarding school for smoking marijuana. *Id.* Eventually, his parents sent him to the Monarch Academy in Montana where his contact with his family was extremely limited, and he experienced a highly confrontational "attack therapy" regimen and had limited formal education. PSR ¶ 50. The academy was shut down and investigated several years after Lindeman finished his time there. PSR ¶ 49. Lindeman completed his high school diploma but found that the education he received did not provide an adequate foundation for college. PSR ¶ 49. Lindeman attended Denver University in Colorado for several months but was kicked out for using drugs. PSR ¶ 80.

The defendant abused cocaine and alcohol from his teenage years until his arrest in this case. PSR ¶ 78. Beginning in his 20s, the defendant began to abuse amphetamines and to use them daily. *Id.* He took OxyContin, Percocet, Adderall, Xanax, and other pills he could obtain. *Id.* The defendant estimated that his drug use was costing him roughly $2,000 a month. *Id.* During most of this period, the defendant had no employment. Prior to his arrest, the defendant reported never having participated in substance abuse treatment. PSR ¶ 79.

Lindeman currently lives at a sober living facility through the New Bridge Foundation. PSR ¶ 68. He has been in a relationship with co-defendant Kaitlyn Weldon for over eight years. PSR ¶ 55. They plan to marry soon. *Id.* Lindeman attends daily AA meetings and participates in mental health counseling. PSR ¶ 79. Lindeman was recently diagnosed with Major Depressive Disorder, Bipolar II Disorder, and Attention-Deficit Hyperactivity Disorder (ADHD). PSR ¶ 71. He was placed on medications and continues to receive mental health therapy. *Id.*

## IV. CONCLUSION

After considering the facts discussed above and the full presentence investigation report, the government respectfully recommends that the Court sentence the defendant to 36 months in prison, 3 years of supervised release, and a $100 special assessment.

DATED: January 13, 2025

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
DANIEL PASTOR
Assistant United States Attorney